# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| EAGLE ROCK CONTRACTING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:14-cv-01278-GMN-NJK |
| vs. | ) | |
| | ) | **ORDER** |
| NATIONAL SECURITY TECHNOLOGIES, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 101), filed by Defendant National Security Technologies, LLC ("Defendant"). Plaintiff Eagle Rock Contracting, LLC ("Plaintiff") filed a Response, (ECF No. 102), and Defendant filed a Reply, (ECF No. 103). For the reasons discussed below, Defendant's Motion is GRANTED in part and DENIED in part.

## I.   BACKGROUND

This case arises from a subcontract between Plaintiff and Defendant for construction services in Nevada (the "Subcontract"). (*See* Mot. for Summ. J. ("MSJ") 1:24–25, ECF No. 101); (*see also* Exs. 11, 12 (the "Subcontract") to MSJ, ECF Nos. 101-11, 101-12). Defendant is the prime contractor for the Department of Energy, National Nuclear Security Administration Nevada Field Office, and Plaintiff is a construction contractor. (MSJ ¶ 1). The Subcontract agreed that Plaintiff would "provide architectural-engineering design and construction services, including installation of fiber optic cable by plowing for 18 miles along U.S. Highway 95 to Creech Air Force Base." (Resp. ¶ 4, ECF No. 102). Plaintiff began performing under the Subcontract on April 11, 2011, (*id.* ¶ 7), and completed work for the project on July 20, 2011, (*id.* ¶ 18).

During the project, Plaintiff subcontracted with at least four subcontractors, including ID Consulting Solutions, LLC; Hofsommer Excavating, Inc.; Trenching Services, Inc.; and Cannon Services Group (collectively "Plaintiff's Subcontractors"). (Ex. 1 ¶ 13 to MSJ, ECF No. 101-2).  Plaintiff's Subcontractors later filed suit against Plaintiff and Defendant to recover amounts Plaintiff owed for work performed pursuant to their individual subcontracts. (*See* Ex. 18 to MSJ, ECF No. 101-28).  Defendant entered into settlement agreements with Plaintiff's Subcontractors, and the lawsuits were eventually dismissed. (Ex. 22 to MSJ, ECF No. 101-33). Plaintiff did not participate in the lawsuits. (MSJ ¶ 39).

Plaintiff brought suit against Defendant on July 25, 2014, claiming that it "performed additional work and incurred additional expenses . . . at [Defendant's] express direction" and that Defendant "refuses to pay" Plaintiff. (Sec. Am. Compl. ("SAC") ¶¶ 20–22, ECF No. 40). Based on these allegations, Plaintiff asserts causes of action under breach of contract and breach of the covenant of good faith and fair dealing. (SAC ¶¶ 18-31).

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A

principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go

beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

Defendant seeks summary judgment on Plaintiff's claims of (1) breach of contract and (2) breach of the implied covenant of good faith and fair dealing.  (MSJ 1:27–2:1, ECF No. 101).  Additionally, Defendant seeks summary judgment for its indemnity counterclaims that would render Plaintiff liable to Defendant for Plaintiff's Subcontractors' previous lawsuits. (*Id.* 2:8–11).  The Court first addresses summary judgment on Plaintiff's claims and then considers summary judgment on Defendant's counterclaims.

### A.   Plaintiff's Claims

Defendant seeks summary judgment on Plaintiff's claims, citing Plaintiff's failure to secure an active contractor's license for the duration of the Subcontract.  (*See* MSJ 11:4–15:11).  On October 22, 2010, the Nevada State Contractors Board ("NCSB") placed Plaintiff's contractor's license on inactive status. (Ex. 6 at 4, ECF No. 101-16).  In November 2010, Plaintiff applied to re-activate its license, which the NCSB denied in March 2011 citing Plaintiff's failure to show financial responsibility. (*Id.* at 7).

In light of this deficiency, the NCSB pursued disciplinary action against Plaintiff. (*Id.* at 18–20).  On June 14, 2011, the NCSB held that Plaintiff's continued failure to demonstrate financial responsibility required Plaintiff's license to remain on inactive status. (*Id.*).  Plaintiff did not successfully re-activate its license until July 25, 2012, more than a year after Plaintiff

fully performed under the Subcontract. (*Id.* at 31).  Indeed, Plaintiff admits that during the performance of the Subcontract "from December 2010 to June 2011, [Plaintiff] did attempt to reactivate the license during the performance of the Subcontract but the request was denied in March 2011 for failure to place an increased bond amount under Nevada law." (Resp. 10:11–14).

Nevada follows the basic doctrine that "contracts made in contravention of the law do not create a right of action." *Vincent v. Santa Cruz*, 647 P.2d 379, 381 (1982); *see also Al–Ibrahim v. Edde*, 897 F. Supp. 620, 623 (D.D.C. 1995) (interpreting Nevada law).  In the absence of a duly-issued contractor's license from the state, a person or business entity is generally barred from bringing an action on the contract or for compensation for performance thereof. Nev. Rev. Stat. § 624.320 (2015).  First, the Court must confirm that Plaintiff is a contractor pursuant to the relevant statute, and then the Court determines whether Plaintiff qualifies for one of the case law exceptions to § 624.320 to render its claim still valid. *See Interstate Commercial Bldg. Servs., Inc. v. Bank of Am. Nat. Trust & Sav. Ass'n*, 23 F. Supp. 2d 1166, 1172 (D. Nev. 1998).  Here, Plaintiff does not dispute that it is a contractor. (Resp. 10:20–22, ECF No. 102) (stating that Plaintiff "has been a practicing contractor in multiple states and held licenses in New Mexico and Virginia as well as working as a contractor in Wyoming and Texas, which don't have a separate licensing requirement.").

Nevertheless, Plaintiff's claims may survive summary judgment if Plaintiff has "substantially complied" with Chapter 624. *See Interstate Commercial Bldg. Servs.*, 23 F. Supp. 2d at 1173.  Pursuant to § 624.700(4), if an entity does not comply with the licensing scheme and submits a bid or enters into a contract, "the bid or contract shall be deemed void *ab initio*." Nev. Rev. Stat. § 624.700(4) (2015).  "The primary purpose of Nevada's licensing statutes is to protect the public against both faulty construction and financial irresponsibility." *MGM Grand Hotel v. Imperial Glass Co.*, 533 F.2d 486, 489 (9th Cir. 1976).

Though Chapter 624 initially served as an absolute bar to contract claims brought by unlicensed contractors, *Magill v. Lewis*, 333 P.2d 717 (Nev. 1958), subsequent cases carved a narrow exception for those who substantially complied with the licensing scheme.  In *Nevada Equities v. Willard Pease Drilling Co.*, 440 P.2d 122 (1968), a drilling company that held two contractor's licenses, one for oil and gas well drilling and a second for water well drilling, maintained a suit for the balance owed on a contract to drill for mineral water even though it did not hold a specialty license from the NCSB. *Nevada Equities*, 440 P.2d at 122.  The *Nevada Equities* court held that the drilling contractor had "substantially complied" with the Nevada licensing scheme because it possessed the general licenses and evinced no signs of financial or technical inadequacy. *Id.* at 123.

Similarly, in *Day v. West Coast Holdings, Inc.*, 699 P.2d 1067 (1985), the Supreme Court of Nevada held that a landscaper subcontractor could enforce a contract with a general contractor given that the landscaper held a general contractor's license and had informed the general contractor that its application for a specialty license was pending. *Day*, 699 P.2d at 1071.  However, the "mere use of licensed subcontractors or another licensed general contractor does not constitute substantial compliance with the licensing scheme." *Interstate Commercial Bldg. Servs.*, 23 F. Supp. 2d at 1174.

Here, Plaintiff did not comply with the Nevada licensing scheme and is therefore precluded from bringing suit.  Unlike *Nevada Equities* and *Day*, where the contractors only lacked additional *specialty* licenses, Plaintiff failed to acquire even an active *general* license to conduct business as a contractor in Nevada.  Plaintiff's contracts with additional subcontractors does not constitute substantial compliance with the licensing scheme.  *See Interstate Commercial Bldg. Servs.*, 23 F. Supp. 2d at 1174.  As a result, the Court finds that pursuant to § 624.320, Plaintiff is a contractor requiring an active license and, in the absence of such a license, Plaintiff is precluded from bringing an action on a construction contract or for

compensation for performance thereof. *See* Nev. Rev. Stat. § 624.700(4) (2015).  Accordingly, the Court holds that the Subcontract is void *ab initio* and therefore grants summary judgment for Defendant on all of Plaintiff's claims.

### B.   Defendant's Counterclaims

In its Answer to the SAC, Defendant asserts four counterclaims, (ECF No. 41).  Because some of the counterclaims relate to the terms of the Subcontract, those claims are rendered moot.[1]  In its Motion for Summary Judgment, Defendant requests that the Court nevertheless consider its third counterclaim for equitable indemnity against Plaintiff even if the Subcontract is void. (MSJ 26 n.50).

Indemnity "allows a complete shifting of responsibility to an 'indemnity obligor' when the party seeking indemnity has extinguished its liabilities incurred as a result of the indemnity obligor's 'active' fault." *Doctors Co. v. Vincent*, 98 P.3d 681, 686 (2004).  Moreover, "[a]t the heart of the doctrine is the premise that the person seeking to assert implied indemnity—the indemnitee—has been required to pay damages caused by a third party—the indemnitor." *Harvest Capital v. WV Dept. of Energy*, 560 S.E. 2d 509, 513 (2002).  Implied indemnification has been developed by the courts to address the unfairness which results when one party, who has committed no independent wrong, is held liable for the loss of a plaintiff caused by another party. *Id.* at 512.

Generally, the remedy is available after the defendant has extinguished its own liability through settlement or by paying a judgment.  *Doctors Co.*, 98 P.3d at 686.  The Supreme Court of Nevada has stated that "a cause of action for indemnity . . . accrues when payment has been made." *Aetna Casualty & Surety v. Aztec Plumbing*, 796 P.2d 227, 229 (1990).  As such, a claimant seeking equitable indemnity must plead and prove that: (1) it has discharged a legal

---

[1] The moot counterclaims are breach of contract, express indemnity, and breach of the covenant of good faith and fair dealing. (Resp. to SAC ¶¶ 83–114, ECF No. 41).

obligation owed to a third party; (2) the party from whom it seeks liability also was liable to the third party; and (3) as between the claimant and the party from whom it seeks indemnity, the obligation ought to be discharged by the latter. *Rodriguez v. Primadonna Co., LLC*, 216 P.3d 793, 801 (2009).

Here, Defendant fails to meet its initial burden to provide evidence demonstrating that it owed a legal obligation to Plaintiff's Subcontractors. *See id.* Specifically, because the Subcontract is void *ab initio*, Defendant did not owe Plaintiff's Subcontractors a legal obligation as any legal obligation owed was voided with the Subcontract. Although Defendant settled with Plaintiff's Subcontractors, Defendant does not explain how the settlements created a legal obligation to indemnify Plaintiff. Indeed, settlement alone does not create a legal obligation. *See Charlie Brown Const., Inc. v. Hanson Aggregates Las Vegas, Inc.*, 2013 WL 3272508, at *3 (Nev. May 31, 2013) ("To establish a right to indemnification where a case is resolved by settlement, the party must establish that the settlement was reasonable[ ][and] that the underlying claim was valid against it."). Accordingly, the Court denies summary judgment for Defendant's remaining equitable indemnity counterclaim.

## IV.  **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 101), is **GRANTED in part** and **DENIED in part**. Specifically, the Court grants summary judgment for Defendant on Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. However, the Court denies summary judgment for Defendant's remaining equitable indemnity counterclaim.

**DATED** this __25__ day of January, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge